**Danny KEETON, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. CIV.A. 92–G–1069–W.**

United States District Court, N.D. Alabama, Western Division.

July 18, 2005.

R. Michael Booker, R. Michael Booker PC, Birmingham, AL, Pat Nelson, Robinson & Nelson, Jasper, AL, for Plaintiff.

Linda S. Trippe, Alice H. Martin, US Attorney, Edward Q. Ragland, US Attorney's Office, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

The plaintiff, Danny Keeton, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Disability Insurance Benefits (DIB). Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

The plaintiff's insured period ended on December 31, 1994, making him ineligible for DIB if he were not found to be disabled as defined under the Act before that date, but that deadline has no effect on eligibility for Supplemental Security Income (SSI) should the plaintiff become disabled outside the insured period and meet certain income requirements. The ALJ awarded the plaintiff SSI beginning August 16, 2002, finding the plaintiff "unable to perform the basic mental requirements of work on a sustained basis." R. 871.

### Standard of Review

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth,* at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth,* at 1239.

### Statutory and Regulatory Framework

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines *disabled* as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42

U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993); *accord, McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, [he] will automatically be found disabled if [he] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [his] past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope* at 477; *accord, Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir.1995).

In the instant case, the ALJ, Jerry C. Shirley, determined the plaintiff had not engaged in gainful activity since the alleged onset date of disability and that he suffered from a severe impairment. Thus, the plaintiff met the first two prongs of the test, but the ALJ concluded the plaintiff did not suffer from a listed impairment nor from an impairment equivalent to a listed impairment. The ALJ found the plaintiff unable to perform his past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote,* at 1559.

### Procedural and Factual Background

This case has a long and tortured past. It has been in the administrative and court systems for fifteen years. For five of those years it lay idle in a lawyer's office and in the Office of Hearings and Appeals. Perhaps, by this opinion, this matter shall come to rest.

Mr. Keeton was thirty years old at the time of the first administrative hearing. He has an eleventh grade education with no additional vocational training. His past relevant work experience was as a tire recapper/retreader, bottler, stock boy, and sawmill worker. He claimed disability because of lower back pain with radiating numbness into his extremities, neck, and spine, muscle spasms, tremors, and seizures with an onset date of September 10, 1989. Benefits were denied by the Social Security Administration initially and upon reconsideration. On September 25, 1991, after an administrative hearing, ALJ Jerry Shirley denied benefits as well.

Mr. Keeton obtained new counsel and submitted new medical evidence from Dr. Charles Bush who had treated Mr. Keeton for approximately three and a half years. The Appeals Council denied Keeton's request for review on March 25, 1992, and ruled that Dr. Bush's findings were cumulative of evidence already of record, despite the fact that the ALJ, Jerry Shirley, deemed Dr. Bush's records to be "largely illegible." The ALJ's decision thus became the Secretary's final decision on that date.

Mr. Keeton filed an appeal in this court on May 7, 1992, that was assigned to the

Honorable E.B. Haltom, Jr. Judge Haltom refused to consider the new evidence that had been submitted to the Appeals Council after the administrative hearing and affirmed the Secretary's decision. Mr. Keeton appealed that decision to the United States Court of Appeals for the Eleventh Circuit. The Eleventh Circuit reversed the decision of the district court and held that the court erred as a matter of law in refusing to consider the new evidence presented to the Appeals Council and remanded the case to the district court for consideration of the new evidence and all other issues. 21 F.3d 1064 (11th Cir.1994). Judge Haltom, in turn, remanded the case to the Secretary for consideration of the new evidence.

Depression and generalized anxiety were included as additional bases of disability with a documented onset of September 30, 1994. A *de novo* hearing was held before ALJ Cooper who denied benefits on May 21, 1996. The plaintiff filed a request for review by the Appeal Council on June 12, 1996. The case lay idle in both the Appeals Council and the plaintiff's attorney's office until it was resurrected on February 14, 2002, and remanded to the ALJ for a supplemental hearing. The supplemental hearing was held by ALJ Shirley on March 17, 2003. ALJ Shirley denied DIB and granted SSI on June 4, 2003. Problems with plaintiff's counsel arose delaying the progress of the appeal of the case. The case became ripe for consideration by this court on May 22, 2005.

SSI benefits were granted on the basis of mental disability as of August 16, 2002. The ALJ found in his Memorandum Opinion that the plaintiff's combination of depression, generalized anxiety disorder, global assessment (GAF) score of 40 were severe in combination. He further found the plaintiff to be unable to perform "the basic mental requirements of work on a sustained basis." R. 869. He based all of these findings on the opinion of treating psychiatrist, Dr. Terry Bentley, who began treating Mr. Keeton on August 16, 2002. Treatment notes, R. 1032–1045. Dr. Bentley stated by letter that "Mr. Keeton remains unable to function in any type of work setting both now and in the foreseeable future." Assessment letter, R. 1031. The ALJ found Mr. Keeton to be "disabled irrespective of his age, education, and/or work experience pursuant to Social Security Rule[s] 85–15 and 96–9p." R. 869.

In his case summary prepared by the ALJ based on Dr. Bentley's opinion, the ALJ found as fact that Mr. Keeton is being treated for depression and generalized anxiety disorder. The plaintiff's symptoms include sleep disturbance, mood fluctuation, difficulty concentrating, and two to four seizures per month. The ALJ cites as medication side effects: daytime somnolence, impaired cognitive ability, and extremely low energy level.

On the basis of these facts, the ALJ found the plaintiff met the requirements of Listings § 12.04A and B and § 12.06A and B. The ALJ's Case Memorandum states:

Claimant meets the requirements in both A and B under § 12.04 in the Listing of Impairments for Affective Disorders in which the required level of severity for these disorders is met when the requirements in both A and B are satisfied (A) Depressive syndrome characterized by Sleep disturbances, Decreased energy, Difficulty concentrating or thinking, Pervasive loss of interest in almost all activities (B) Marked restrictions of activities of daily living, marked difficulties inmaintaining [sic] social functioning, marked difficulties in maintaining concentration, persistence or pace. Claimant meets the requirements in both A and B under § 12.06 in the Listing of Impairments set by the Social

Security Administration for Anxiety Related Disorders in which the required levels of severity for these disorders is met when the requirements in both A and B are satisfied. (A) Generalized persistent anxiety accompanied by apprehensive expectation, vigilance, and scanning, and motor tension; Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension of impending doom occurring on the average of at least once a week resulting in marked restriction of daily activities, marked difficulties in maintaining social functioning and concentration.

R. 1047.

In his Memorandum Opinion, the ALJ does not go into this much detail. He merely states that the plaintiff "is unable to perform the basic mental requirements of work on a sustained basis" from August 16, 2002, through the date of the opinion, June 4, 2003. He states that the decision is appropriate under Social Security Rules 85–15 and 96–9p.

### Findings and Holding

■ The court agrees that Dr. Bentley's opinions provide substantial evidence of mental impairment meeting disability requirements, and the ALJ was correct to so find. The court, however, finds blatant reversible error in the ALJ's near complete disregard of psychologist Dr. Dwayne Crist's detailed report of September 30, 1994. R. 449–455(Crist report); R. 866(ALJ's discounting of report).[1] No substantial evidence exists to support the rejection of this evidence. ALJ Shirley discounted Dr. Crist's report by saying Mr. Keeton had no mental disability before 2002 because he did not seek mental health treatment until 2002 when he began seeing

Dr. Bentley. That statement is not supported by substantial evidence of record. The record clearly shows that Mr. Keeton was consistently treated for anxiety and sleep problems by his primary physicians. No evidence exists in the record to show that Mr. Keeton was ever advised to seek more specialized care. To charge us all, including those among us like Mr. Keeton who has a GAF of 35 to 40 and a full scale IQ of 71, with the duty to know whether treatment by primary care physicians is adequate imposes a burden not found in the law.

Dr. Crist's report provides significant detail and testing results. Dr. Crist performed a wide range of quantitative tests on Mr. Keeton as well as evaluating him subjectively. The ALJ chose instead to rely on the consultative report of Dr. George Turner whose report was primarily a rote recounting of the information Mr. Keeton reported to him at a consultative visit and Mr. Keeton's responses to some basic questions regarding orientation and common sayings. Dr. Turner performed no quantitative testing and observed Mr. Keeton only once at the request of the government. Even so, like Dr. Crist, Dr. Turner found that Mr. Keeton suffered from a seizure disorder and "Major Depressive Disorder with some Anxiety features" with his overall prognosis likely to be poor. R. 484.

Perhaps, most striking are the similarities of the conclusions reached by Dr. Bentley in 2002 and by Dr. Crist in 1994. Dr. Bentley found Mr. Keeton to have a GAF of 40; Dr. Crist found a GAF of 35. Both found major depression, significant anxiety, sleep disturbance, mood fluctuation, difficulty concentrating, low energy level, inability to cope in work and social

---

1. Dr. Crist's report provides more detail and objective test results than the records provided from Dr. Bentley, the psychiatrist that the ALJ accepted as establishing plaintiff's disability.

situations, inappropriately high levels of anger and irritability, impaired cognitive ability, severe lack of interest in activities, severe lack of appetite with marked weight loss. Dr. Crist's report provided testing data in support of his conclusions. Dr. Crist's findings were consistent with Dr. Bentley's. Even the crux of Dr. Turner's findings are consistent wit Dr. Crist's and Dr. Bentley's findings-major depressive disorder, anxiety, and poor prognosis.

■ Mr. Keeton's disability was documented by substantial evidence on September 30, 1994, and no substantial evidence has been proffered to support a contrary conclusion. That the ALJ "prefers"[2] the opinion of a psychiatrist to that of a psychologist does not meet the applicable legal standard. He failed to support his conclusion regarding Mr. Keeton's mental impairments with substantial evidence as required by law. *Bloodsworth v. Heckler,* 703 F.2d 1233 (11th Cir.1983).

Accordingly, by separate order, the court will reverse the Commissioner's decision and order disability benefits be paid with an onset date of September 30, 1994.

### FINAL ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, the court

ORDERS, ADJUDGES and DECREES that the decision of the Commissioner of the Social Security Administration is hereby REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed with an onset date of September 30, 1994. The court

FURTHER ORDERS that the Commissioner withhold from payments that are determined to be due the plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fee to be allowed plaintiff's counsel for services rendered in representing plaintiff in this cause.

The court FURTHER ORDERS pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby granted an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*

---

**2.** "Prefers" is the actual word used by the ALJ several times in his opinion in reference to medical evidence and experts. The court finds administrative "preference" to be an inappropriate standard under the law. The ALJ must look at the substance and quality of the evidence presented by looking at, among other things—the nature of the opportunities of the professionals to observe the claimant, the type of evaluative tools employed, the similarities and dissimilarities between evaluations, the qualifications of the professionals, and the depth of the reports as reflected in their texts and supporting documents.